UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL A. JACKMAN, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF POCATELLO; ROGER SCHEI; KEVIN NIELSEN; and JOHN DOES I-X, <br><br> Defendants. | Case No. 4:21-cv-00379-AKB <br><br> **MEMORANDUM DECISION AND ORDER** |

On September 20, 2021, Plaintiff Michael A. Jackman filed this action against Defendants the City of Pocatello (Pocatello), Pocatello Police Chief Roger Schei (Chief Schei), and Pocatello Police Officer Kevin Nielsen (Officer Nielsen).  Pending before the Court are Defendants' Motion for Summary Judgment (Dkt. 23) and their Motion in Limine (Dkt. 33).  Under Idaho Local District Rule 7.1(d)(1)(B), the Court finds oral argument is not necessary to resolve this matter.[1]  *See also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").  The Court grants both motions.

---

[1]   Originally, the Court scheduled a hearing on Defendants' motions for June 15, 2023.  After the hearing was scheduled, this case was reassigned to the undersigned on June 5.  After reassignment, the Court vacated the June 15 hearing and rescheduled it for September 6.  Since scheduling that hearing, the Court has reviewed the parties' submissions and concludes oral argument will not aid in resolving the motions.

**MEMORANDUM DECISION AND ORDER - 1**

I.

BACKGROUND

Jackman's unverified complaint alleges that on September 22, 2019, he encountered Officer Nielsen on a bridge in a Pocatello park and that during this encounter Officer Nielsen violated Jackman's First, Fourth, and Fourteenth Amendment rights. Based on these allegations, Jackman asserts claims under 42 U.S.C. § 1983.

Defendants moved for summary judgment requesting the Court to dismiss Jackman's action. (Dkt. 23). Jackman filed a responsive brief (Dkt 28); "Plaintiffs' Statement of Material Facts in Dispute" (Dkt. 28-1); a supporting declaration by Jackman's counsel (Dkt. 27); and counsel's supplemental declaration, (Dkt. 28-2). The original declaration attaches two audio recordings of statements by Linda Murray and Melissa Brucks—both of whom witnessed Jackson's encounter with Officer Nielsen—and a video recording of the bridge where Jackman encountered Officer Nielsen. (Dkt. 27 at ¶¶ 2-3, 10, Exs. 1, 2, 9). The supplemental declaration attaches written summaries of the audio recordings of Murray's and Brucks's statements. (Dkt. 28-2 at Exs. 11, 12). Jackman's counsel attests he prepared these summaries. (*Id.* at ¶¶ 4-5). Defendants then filed a motion in limine to exclude the two audio recordings, counsel's written summaries of the recordings, and the video of the bridge. Jackman has never responded to Defendants' motion in limine.

II.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the

MEMORANDUM DECISION AND ORDER - 2

case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence is insufficient. *Id.* at 252. Rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*.

In deciding whether there is a genuine dispute of material fact, the Court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Under Rule 56(c)(1)(A), the nonmoving party asserting a fact is genuinely disputed must support that assertion by particularly citing to materials in the record. The opposing party, however, may object to the cited material if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). That a court may only consider admissible evidence in ruling on a summary judgment motion is well established. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988).

In determining admissibility for summary judgment purposes, the Court considers the contents of the evidence rather than its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If a party could present the contents of the evidence in an admissible form at trial, the Court may consider the contents on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay). The Court should sparingly grant

**MEMORANDUM DECISION AND ORDER - 3**

motions in limine and only in those instances where the evidence is plainly inadmissible on all potential grounds. *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007).

## III.

## ANALYSIS

### A. Motion In Limine

#### 1. Audio Recordings, Written Summaries, and Video

As an initial matter, the Court rules on Defendants' motion in limine. Defendants filed their motion on February 20, 2023, but Jackson never responded to it. The Ninth Circuit has held that a district court may properly grant a motion under a local rule for failure to respond. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). The District of Idaho Local Rules expressly provide a party's failure to file either a notice of non-opposition or a memorandum in opposition to a motion (other than one for summary judgment) may be deemed consent to the requested relief. D. Id. L. Civ. R. 7.1(e). Based on this rule, the Court grants Defendants' motion in limine and excludes from its consideration the audio recordings, the summaries thereof, and the video of the bridge. This evidence includes Exhibits 1, 2, and 9 to the original declaration of Jackman's counsel (Dkt. 27) and Exhibits 11 and 12 of his supplemental declaration (Dkt. 28-2).

An additional basis to exclude this evidence is Jackman's failure to comply with his discovery obligations. According to Jackman's counsel, Murray's and Brucks's recorded witness statements were taken on October 8 and 10, 2019, respectively.[2] (Dkt. 27 at ¶¶ 2-3). Defendants state, however, that Jackman never provided this information in response to their discovery requests. (Dkt. 33 at pp. 4-5). Further, Jackman apparently did not include the evidence in his

---

[2] The video recording of the bridge was likewise taken on October 8, 2019, according to Jackman's counsel.

**MEMORANDUM DECISION AND ORDER - 4**

initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii) (requiring, among other things, identification of individuals with discoverable information and electronically stored information used to support claims). Jackman's failure to disclose the information until after the discovery deadline and after Defendants filed their summary judgment motion warrants exclusion of the information. *See* Fed. R. Civ. P. 37(c)(1)(C); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (holding that when party fails to disclose witness as required by Rule 26(a), party is not allowed to use witness to supply evidence). Moreover, Defendants objected to the audio-recorded statements and the summaries as inadmissible hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as out-of-court statement offered for truth of matter); Fed. R. Civ. P. 56(c)(2) (noting party may object to cited material as inadmissible). Jackman, however, never responded to the objections.

### 2. Disputed Facts Sans Murray's and Brucks's Statements

Having excluded the audio recordings and summaries of Murray's and Brucks's witness statements, the Court must determine if any disputed issues of material fact based on the remaining evidence preclude summary judgment. Jackman's statement of "disputed" facts relies almost entirely on Murray's and Brucks's statements. (*See* Dkt. 28-1). After the exclusion of those statements, the only remaining evidence on which Jackman relies are limited, select portions of his and Officer Nielsen's deposition testimony. (*See id.*) Meanwhile, Defendants rely primarily on Officer Nielsen's testimony. (Dkt. 23-2). Determining if any disputed material facts exist turns on a comparison of Officer Nielsen's and Jackson's testimony regarding the encounter.

#### a. Officer Nielsen's testimony

Officer Nielsen testified regarding the encounter that he approached Jackman and a woman in the park. When doing so, Officer Nielsen was "away from all [his] backup" and noted a "kid

**MEMORANDUM DECISION AND ORDER - 5**

and his mom" nearby. (Dkt. 23-3 at Ex. A, p. 33, l. 21; p. 34, ll. 22-23). When Officer Nielsen addressed the woman with Jackman, Officer Nielsen's questions to the woman "really made [Jackman] upset"; Jackman was exhibiting "pre-attack indicators"; and Officer Nielsen thought Jackman was "suffering from mental problems" and was "about ready to fight" him. (*Id.* at Ex. A, p. 33, l. 5, 12, 17, 22). Jackman got "about 12 inches, almost face to face" with Officer Nielsen and was "calling [him] a mother fucker." (*Id.* at Ex. A, pp 33, l. 25 - 34, ll. 1-2).

In response, Officer Nielsen "thrust [his] arm up and out with [his] hand forward," "was using [his] hand to move [Jackman] away from [him]," and told Jackman "you need to go home." (*Id.* at Ex A, p. 33, ll. 6-9, 14-15; p. 35, l. 7). When Officer Nielsen was using his hand to move Jackman away, Jackman "grabbed [Officer Nielsen's arm] with two hands, [threw] it down, and yell[ed] don't touch me mother fucker and continue[d] to use the eff word." (*Id.* at Ex. A, p. 35, ll. 1-3). When Officer Nielsen "move[d] [Jackman] back," Jackman tripped over Officer Nielsen's bike and fell down. (*Id.* at Ex. A, p. 35, ll. 11-13). At that time, Officer Nielsen pulled his Taser but did not deploy it and placed Jackman under arrest for battery on a police officer. (*Id.* at Ex. A, p. 35, ll. 14-16).

b. **Jackman's testimony**

Jackman somewhat similarly testified Officer Nielsen approached him and Brucks in the park during the day, and Officer Nielsen spoke to Brucks saying, "[I]s this your new boy?" to which Jackman responded, "[Y]ou don't have to talk to her like that. We're just walking." (Dkt. 27 at Ex. 3, p. 55, ll. 3-5.) At that point, Officer Nielsen told Jackman to "shut up and get over there," "point[ing] in the direction on the other side of [Officer Nielsen] and his bike." (*Id.* at Ex. 3, p. 55, ll. 6-8). As Jackman was stepping around Officer Nielsen's bike and "was on one foot to go where [Officer Nielsen] told [him]," Officer Nielsen "shoved" and "pushed" him. (*Id.* at Ex. 3, p. 69, ll.

**MEMORANDUM DECISION AND ORDER - 6**

4-6). Jackman's testimony suggests that at that point, he either fell or was pushed to the ground. (*Id.* at Ex. 3, p. 69, ll. 19-20).

Jackman acknowledges that, "after I got off the ground," he slapped Officer Nielsen:

> Q. At what point did you grab ahold of him?
> A. After I got off the ground. I didn't grab him. I slapped his hand off me. . . .
> Q. So you slapped his hands away as he was trying to grab you?
> A. When he grabbed me, I pushed his hand off.

(*Id.* at Ex. 3, p. 69, ll. 7-16). Further, Jackman acknowledges that during the encounter he was angry, testifying "I mean, yeah, I was mad. I was yelling." (*Id*. at Ex. 3, p. 55, ll. 13-14).

Jackman testified that after he slapped Officer Nielsen's hand away, Officer Nielsen arrested him. Describing the arrest, Jackman testified:

> [T]he next thing you know he reached out, he grabbed me again, twisted my arm behind my back, and started smashing me into the railing of the bridge. You know, it's like all I could do was yell: Enough. Enough. I'm on the chronic pain list. Stop. Stop.
> And he finally did after a few minutes, he finally stopped. . . . The next thing you know I'm being handcuffed. He slams his knee on my back, cuffs me, jumps off, pulls his gun out, and then he puts it back, and then he pulls his Taser out.

(*Id.* at Ex. 3, p. 56, ll. 2-14). Finally, Jackman testified that he has previously had surgery on his shoulder, which was healing, and that Officer Nielsen re-injured Jackman's shoulder during the arrest. (*Id.* at Ex. 3, p. 98, ll. 19-22).

### c. Undisputed material facts

While there are obviously some differences between Officer Nielsen's and Jackman's description of the encounter, the material facts do not differ. Those facts are that Officer Nielsen encountered Jackman and Brucks in the park during the day when Officer Nielsen was alone and when a mother and her child were nearby. Jackman objected to Officer Nielsen's questioning of Brucks, exhibited signs of anger, and came within arm's reach of Officer Nielsen. Officer Nielsen

**MEMORANDUM DECISION AND ORDER - 7**

pushed Jackman back, and Jackman fell. At some point during this encounter—either before or after Jackman fell to the ground—Officer Nielsen grabbed Jackman, who slapped Officer Nielsen's hand away. After Jackman slapped Officer Nielsen, Officer Nielsen arrested Jackman for battery of a police officer. Jackman's testimony does not dispute but rather confirms these facts. The Court concludes Jackson's § 1983 claims fail on these undisputed facts.

**B.   § 1983 Claims**

In Jackman's complaint, he cites 42 U.S.C. § 1983 and makes numerous allegations, but he does not identify any separate claims for relief. In Defendants' summary judgment motion, they characterize Jackman's allegations as asserting claims for unlawful arrest, excessive force, and malicious prosecution. Jackman does not dispute this characterization, although he asserts he also stated a claim of retaliation for exercising his First Amendment rights.

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In other words, courts have required plaintiffs to show that "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021).

**1.   Unlawful arrest**

A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment if the arrest was without probable cause or other justification. *Dubner v. City ^ Cnty. of San Francisco*, 266 F.3d 959, 964 (2001). Under Idaho law, "probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an

**MEMORANDUM DECISION AND ORDER - 8**

honest and strong presumption that such person is guilty." *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (Idaho 1996). This standard is consistent with federal law, which provides that "probable cause exists when, under the totality of the circumstances known to the arresting officers . . . a prudent person would believe the suspect had committed a crime." *Dubner*, 266 F.3d at 966.

Although the plaintiff bears the burden of proof on the issue of an unlawful arrest, he can make a prima facie case by showing the arrest was a warrantless arrest. *Id*. at 965. "At that point the burden shifts to the defendant to provide some evidence the arresting officers had probable cause for the arrest." *Id.* The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant. *Id.* Whether an officer could have reasonably believed probable cause existed to justify an arrest is a legal question. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). "Where the underlying facts are undisputed, a district court must determine the issue of whether probable cause existed to justify an arrest on [a] motion for summary judgment." *Id.*; *see also Dubner*, 266 F.3d at 966.

In this case, Officer Nielsen arrested Jackman for battery on a law enforcement officer, Idaho Code §§ 18-903(a), 18-915(3)(b). (Dkt. 27 at Ex. 5). Battery includes a "[w]illful and unlawful use of force or violence upon the person of another." I.C. § 18-903(a). Under Idaho law, the battery of a police officer "[w]hile the victim is engaged in the performance of his duties and the person committing the offense knows or reasonably should know that such victim is a . . . police officer" is a felony. I.C. § 18-915(3)(b). At issue is whether Officer Nielsen had probable cause to believe Jackman had committed battery on him.

Defendants assert Officer Nielsen had probable cause to arrest Jackman. They note that "the act of grabbing or slapping any part of a police officer's body constitutes battery of a police

**MEMORANDUM DECISION AND ORDER - 9**

officer under [I.C. § 18-903]" and that "there can be no doubt that Jackman grabbed or slapped Officer Nielsen's hands." (Dkt. 23-1, p. 4). Jackman disagrees Officer Nielsen had probable cause. In support, Jackman argues that Officer Nielsen unlawfully seized "Jackman before [he] moved [Officer] Nielsen's hand off him" and that Officer Nielsen lacked "probable cause for [the crime of battery] until Jackman pushed his hand away." (Dkt. 28, pp. 4-5).

The Supreme Court has long established that not every police-citizen contact rises to the level of a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). A consensual encounter, in which an officer approaches an individual in a public place and merely asks a few questions, does not trigger Fourth Amendment scrutiny, provided the officer does not imply a response is obligatory. *See id.*; *Florida v. Royer*, 460 U.S. 491, 497 (1983). Only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen" does a seizure occur. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). With respect to a show of authority, as opposed to physical force, a seizure occurs only where the subject yields or submits to the assertion of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

In determining whether there has been a show of authority constituting a seizure, courts must examine all the surrounding circumstances to determine whether a reasonable, innocent person would feel that "he was not at liberty to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437. Relevant circumstances include: (1) the time and place of the encounter; (2) the number of officers on the scene; (3) use of language or tone indicating compliance with the officer's request might be compelled; (4) intimidating movements or authoritative manner; (5) physical touching or the application of force; (6) whether the officer displayed a weapon or was in uniform; (7) restriction of the detainee's movements; and (8) whether the detainee was advised of his right to terminate the encounter. *Mendenhall*, 446 U.S. at 554.

**MEMORANDUM DECISION AND ORDER - 10**

Considering these relevant factors, the undisputed facts show that Officer Nielsen did not seize Jackman without probable cause before arresting him. Although Officer Nielsen "yelled" at Jackman to "shut up" and to move away, directed him to step aside, and pushed him, the other relevant factors weigh against concluding Officer Nielsen seized Jackman without probable cause before arresting him. These facts include that Officer Nielsen encountered Jackman during the day in a public park; Officer Nielsen was the only officer on the scene; a mother and her child were nearby; and Officer Nielsen did not restrict Jackman's movement by advising him, for example, to sit down. Rather, Officer Nielsen told Jackman "to go home," a fact Jackman does not dispute. Importantly, Jackman never testified he felt restrained. While Officer Nielsen instructed Jackman to move away, Jackman does not testify that Officer Nielsen restricted Jackman's movements or that he submitted to Officer Nielsen's authority before slapping his hand away. Based on the undisputed facts, the Court concludes Officer Nielsen did not seize Jackman without probable cause before arresting him. Meanwhile, Jackman concedes probable cause existed for his arrest after he slapped Officer Nielsen's hand away. (Dkt. 28 at p. 5 (stating Officer Nielsen "lacked any reasonable suspicion or probable cause . . . *until* Jackman pushed his hand away" (emphasis added)).

Jackman also argues he had a right to offer reasonable resistance to Officer Nielsen's conduct because Officer Nielsen was "the clear and sole aggressor against [him] without provocation." (*Id.* at p. 3). *See Blankenhorn v. City of Orange*, 485 F.3d 463, 48 (9th Cir. 2007) (concluding factual question that arrestee's resistance was reasonable under circumstances of officers' provocative actions). In support of this characterization, Jackman relies in part on Murray's and Brucks's witness statements. As discussed above, however, the Court is not considering those excluded statements, and Jackman's testimony belies his characterization of

**MEMORANDUM DECISION AND ORDER - 11**

Officer Nielsen as the "sole aggressor." Rather, Jackson acknowledges that during the encounter he was "mad," "yelling," and "swearing" and that he slapped Officer Nielsen. The undisputed facts show that Officer Nielsen was not the "sole aggressor"; Officer Nielsen did not seize Jackman without probable cause; and Officer Nielsen had probable cause to arrest Jackman. Accordingly, Defendants are entitled to summary judgment on Jackman's claim of unlawful arrest. *Dubner*, 266 F.3d at 964 (recognizing cognizable § 1983 claim for unlawful arrest in violation of Fourth Amendment requires proof of *no* probable cause).

### 2. Malicious prosecution

Because Officer Nielsen had probable cause to arrest Jackman, Defendants are also entitled to summary judgment on Jackman's malicious prosecution claim. To prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause and that they did so to deny him equal protection or another specific constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002). The mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause. *Freeman*, 68 F.3d at 1189.

Jackman argues Officer Nielsen maliciously prosecuted him by "knowingly and falsely averr[ing] in his affidavit of probable cause that [Jackman] was physically abusive and aggressive toward [Officer] Nielsen." (Dkt. 28 at p. 7). Officer Nielsen's probable cause affidavit, however, is consistent with his deposition testimony, including that Jackman was acting in an aggressive manner when Officer Nielsen encountered him in the park. (*See* Dkt. 28-2 at Ex. 14). Jackman's

**MEMORANDUM DECISION AND ORDER - 12**

deposition testimony is, likewise, consistent with Officer Nielsen's description of Jackman as behaving in an aggressive manner. Namely, Jackman acknowledged being "mad," "yelling," and "swearing" during the encounter and slapping Officer Nielsen's hand away. As discussed above, Officer Nielsen had probable cause to arrest Jackman, which forecloses Jackman's malicious prosecution claim.[3]

### 3. Excessive force

*Graham v. Connor*, 490 U.S. 386 (1989), establishes the framework for evaluating claims of excessive force in violation of the Fourth Amendment. Under *Graham*, "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). The Government's interests are evaluated by looking at a range of factors, including: "[1] the severity of the crime at issue, [2] whether the suspect poses an

---

[3] On reply, Defendants argue for the first time that two independent sources, i.e., the prosecuting attorney and the magistrate court, verified probable cause existed for Jackman's arrest and that he fails to address these independent verifying sources. There is a rebuttable presumption that a prosecutor exercises independent judgment in deciding to file criminal charges, thus immunizing the investigating officers from liability for injuries suffered after the charging decision. *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986). This presumption may be rebutted with evidence the officers "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "Such evidence must be substantial." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008). Because Defendants did not raise an independent source defense until their reply brief, however, the Court need not consider the argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Regardless, that the prosecutor and magistrate court both found probable cause supports this Court's conclusion that probable cause existed.

**MEMORANDUM DECISION AND ORDER - 13**

immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. In other words, the question is whether the totality of circumstances justifies the officer's actions. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Officers need not use the least intrusive means available to them. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quotations and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *Wilkinson*, 610 F.3d at 550. "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Harmon v. City of Pocatello*, 431 F. Supp. 3d 1135, 1155 (D. Idaho 2020). "Moreover, even if serious injuries result from handcuffing techniques due to a preexisting condition, there can be no constitutional violation unless officers knew of the condition." *Id.*

In this case, Jackman has admitted that he was "mad," "yelling," and "swearing" at Officer Nielsen and that Jackman slapped him. At the time, Officer Nielsen was alone, without backup, and a mother and her child were nearby. Under these circumstances, Officer Nielsen had probable cause to arrest Jackman and was justified in handcuffing him. Although Jackman's description of the arrest indicates Officer Nielsen handled Jackman roughly, Jackman presents no evidence either that this conduct was unreasonable under the circumstances or that Officer Nielsen knew Jackman

**MEMORANDUM DECISION AND ORDER - 14**

has a preexisting shoulder injury. Accordingly, the undisputed facts show Officer Nielsen did not use excessive force in arresting Jackman, and Defendants are entitled to summary judgment on Jackman's claim of excessive force.

### 4. Municipality liability

Under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978), municipalities may be held liable as "persons" under 42 U.S.C. § 1983, although not for the unconstitutional acts of their employees based solely on a respondeat superior theory. Rather, a plaintiff seeking to impose liability on a municipality under § 1983 is required to identify a municipal policy or custom which caused the plaintiff's injury. *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). A *Monell* claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 930 (E.D. Cal. 2015).

A plaintiff may claim *Monell* liability where an "official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). A policymaker's "knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Additionally, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* Rather, municipal liability requires the official, who is responsible for establishing final policy with respect to the subject matter in question, to

**MEMORANDUM DECISION AND ORDER - 15**

make "a deliberate choice to follow a course of action" in lieu of other alternatives. *Gillette*, 979 F.2d at 1347.

The Defendants argue that "there is absolutely no evidence in this case [Pocatello] failed to adequately train or supervise its officers." (Dkt. 23-1 at p. 15). Jackman's response, however, focuses on ratification instead of a failure to train or supervise. He asserts the Pocatello Police Department did not investigate Officer Nielsen's "use of force," did not interview Brucks, did not discipline Nielsen, and did not change its policies because of the incident. In support, Jackman cites Officer Nielsen's testimony exclusively. (Dkt. 28, p. 13). Based on these purported facts, Jackman contends there are "genuine issues of material fact [the Department] ratified Nielsen's constitutional violations."

Jackman, however, fails to show key facts necessary to support his ratification claim including, for example, who the policymaker was; what that individual's ratifying conduct was; and the policy at issue. Further, Jackman's citation to Officer Nielsen's testimony does not support Jackman's recitation of the purported facts of ratification. Contrary to Jackman's assertion that no investigation occurred, Officer Nielsen merely testified that only he was not aware of an investigation and that whether an investigation occurred was "a supervisor question." (Dkt. 27 at Ex. 7, p. 75). Further, when Officer Nielsen was asked, "do you know if anybody on your behalf was interviewed [Brucks]," he responded "[o]n my behalf, no." This response does not support Jackman's assertion that no one from Pocatello interviewed Brucks otherwise. The remaining facts—that Officer Nielsen was not disciplined and no policy was changed—are insufficient to establish a genuine issue of material fact. Because no material factual issues regarding an alleged ratification of an alleged constitutional violation exist, Defendants are entitled to summary judgment on Jackman's *Monell* claim.

**MEMORANDUM DECISION AND ORDER - 16**

### 5. Retaliation for exercise of First Amendment right

Finally, Jackman asserts he alleged a claim for retaliation for exercising his First Amendment rights. (Dkt. 28 at p. 18). As noted above, Jackman's complaint fails to identify his specific claims for relief, and Defendants did not construe Jackman's allegation to state a retaliation claim. In support of Jackman's assertion that he alleged such a claim, he cites to the following allegation in his complaint:

> [Officer] Nielsen's arrest of [Jackman] was without probable cause but for "contempt of cop,"[4] i.e. in retaliation for [Jackman's] constitutionally protected protest and challenges against (a) [Officer] Nielsen's asserted authority to so aggressively and baselessly interrogate [Brucks], and (b) [Officer] Nielsen's asserted authority to use such excessive force against [Jackman] with any lawful justification whatsoever.

(Dkt. 28 at p. 10 (citing Dkt. 1 at ¶ 19)).

Although Jackman contends these allegations state a claim of retaliation for exercising his First Amendment rights, the allegations do not specifically mention the First Amendment or exactly how he was exercising them. Regardless, assuming Jackman's allegations adequately state a claim for relief, that claim fails on the undisputed facts. As discussed above, Officer Nielsen had probable cause to arrest Jackman, arrested him for battery on a law enforcement officer, was justified in handcuffing Jackman, and did not use excessive force. These undisputed facts establish Officer Nielsen did not arrest Jackman because he was exercising his First Amendment rights. Moreover, the only evidentiary support Jackman cites in support of his First Amendment claim

---

[4] Black's Law Dictionary defines "contempt of cop" as "[a] civilian's challenge to a law-enforcement officer's authority—as by expressing defiance, anger, mockery, or similar disrespect—made in such a way as to provoke the officer to respond inappropriately or illegally, as by making an arbitrary arrest, improperly detaining the person, or using unwarranted force." *Contempt of Cop*, BLACK'S LAW DICTIONARY (11th ed. 2019).

**MEMORANDUM DECISION AND ORDER - 17**

are the excluded witness statements. Accordingly, Defendants are entitled to summary judgment on Jackman's retaliation claim.

IV.

CONCLUSION

**IT IS ORDERED that:**

1. Defendants' Motion in Limine (Dkt. 33) is **GRANTED**; and

2. Defendants' Motion for Summary Judgment (Dkt. 23) is **GRANTED**.

DATED: July 19, 2023

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 18